WILLIAM S. BRODY (SBN 136136)
Email: wbrody@buchalter.com
POOYA E. SOHI (SBN: 241574)
Email: psohi@buchalter.com
RUSSELL L. ALLYN (SBN: 14353)
Email: rallyn@buchalter.com
BUCHALTER
A Professional Corporation
1000 Wilshire Blvd. Suite 1500
Los Angeles, CA  90017-2457
Telephone: (213)  891-0700
Facsimile:  (213)  896-0400

Attorneys for Plaintiff,
BANK OF HOPE, a California corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK OF HOPE, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>YICIF, LLC a New York limited liability company; CROWN AIR, LLC, a Wyoming limited liability company; 100 MILLION, LLC, a Delaware limited liability company; 100 MILL, LLC, a Delaware limited liability company; YES I CAN LICENSED BEHAVIOR ANALYST PLLC, a New York limited liability company; SIMCHA FELLER, an individual; ITA FELLER, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br><br>1. **Breach of Written Contract;**<br>2. **Money Lent;**<br>3. **Account Stated;**<br>4. **Recovery of Personal Property;**<br>5. **Breach of Guaranty;**<br>6. **Appointment of Permanent Receiver and Injunction.** |

BN 84203403V6

1

**COMPLAINT**

Plaintiff Bank of Hope, a California corporation ("Plaintiff") complains and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action to recover the outstanding balance owed on a loan made to Defendant YICIF, LLC ("Defendant Borrower") in the original principal sum of $7,800,000.00 (the "Loan"). The Loan was made by Plaintiff to Defendant Borrower for the purpose of purchasing two Dassault Aviation model Falcon 2000 aircraft (defined below as the Aircraft) owned by affiliates of Defendant Borrower: Defendants Crown Air, LLC and 100 Million, LLC. Defendants Simcha Feller and Ita Feller, principals of Defendant Borrower, Defendants Crown Air, LLC and 100 Million, LLC, and two other affiliated entities, Defendants 100 Mill, LLC, and Yes I can Licensed Behavior Analyst PLLC (collectively, "Defendant Guarantors" and each "Defendant Guarantor") are each obligated to Plaintiff pursuant to individual guaranty agreements in amounts equal to the amount of the obligations owed by Defendant Borrower to Plaintiff. Defendant Borrower defaulted on the Loan by, among other defaults, failing to pay amounts owed to Plaintiff under the Loan Documents (defined below). Each Defendant Guarantor defaulted on its obligations by failing to pay all amounts owed to Plaintiff under each of their respective Guaranty Agreements (defined below). As such, Plaintiff seeks to recover from Defendant Borrower and Defendant Guarantors the outstanding amounts and other obligations due and owing to Plaintiff including, without limitation, unpaid principal, accrued interest, fees, charges, and all other obligations due and such other relief as allowed by law.

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§1332 and 1348 in that this is a civil action between citizens of different states and in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district. The subject contracts and guaranties were prepared and negotiated in Los Angeles, California, where Plaintiff maintains its principal office, and performance of the contracts and guaranties, such as receipt and application of payments of amounts due, was to take place. Additionally, the contracts and guaranties that are the subject of this action contain venue clauses that provide that the parties consent to venue before the courts located in Los Angeles, California.

4. Plaintiff is organized under the laws of the State of California. Plaintiff is informed and believes, and based thereon alleges, that Defendant Borrower is organized under the laws of the State of New York and that Defendant Guarantors are citizens of the State of New York or are organized under the laws of the State of Wyoming, Delaware, and New York.

## THE PARTIES

5. Plaintiff is a California corporation with its principal place of business and main office located at 3200 Wilshire Boulevard, 7th Floor, Los Angeles, CA 90010.

6. Defendant Borrower is a limited liability company organized under the laws of the State of New York. Plaintiff is informed and believes that at all relevant times, Defendant Borrower maintained its principal place of business within the State of New York at 5309 18th Avenue, Suite 300, Brooklyn, NY 11204.

7. Defendant Crown Air, LLC ("Crown Air") is a limited liability company organized under the laws of the State of Wyoming. Plaintiff is informed and believes that at all relevant times, Defendant Crown Air maintained its principal place of business within the State of New York at 5309 18th Avenue, Suite 300, Brooklyn, NY 11204.

8. Defendant 100 Million, LLC ("100 Million") is a limited liability company organized under the laws of the State of Delaware. Plaintiff is informed

and believes that at all relevant times, Defendant 100 Million maintained its principal place of business within the State of New York at 5309 18th Avenue, Suite 300, Brooklyn, NY 11204.

9. Defendant 100 Mill, LLC is a limited liability company organized under the laws of the State of Delaware. Plaintiff is informed and believes that at all relevant times, Defendant 100 Mill, LLC maintained its principal place of business within the State of New York at 5309 18th Avenue, Suite 300, Brooklyn, NY 11204.

10. Defendant Yes I Can Licensed Behavior Analyst PLLC ("YICLBA") is a limited liability company organized under the laws of the State of New York. Plaintiff is informed and believes that at all relevant times, Defendant YICLBA maintained its principal place of business within the State of New York at 5309 18th Avenue, Suite 300, Brooklyn, NY 11204.

11. Defendant Simcha Feller ("Simcha") is an individual who, at all relevant times, resided in New York, New York.

12. Defendant Ita Feller ("Ita") is an individual who, at all relevant times, resided in New York, New York.

13. Plaintiff is unaware of the true names, capacities, or bases for liabilities of defendants Does 1 through 20, inclusive, and therefore sues these defendants by their fictitious names. Upon Plaintiff ascertaining their true names, capacities, or basis for liability, Plaintiff will amend this Complaint. Plaintiff is informed, believes, and thereon alleges that defendants Does 1 through 20, inclusive, and each of them, are liable to Plaintiff or claim some interest in the personal property collateral as described below that is junior and inferior to Plaintiff's interest, or both.

14. At all times relevant to this action, each Defendant, including those fictitiously named, was the agent, servant, employee, partner, joint venturer, or surety of one or more of the other Defendants and was acting within the scope of

said agency, employment, partnership, venture, or suretyship, with the knowledge and consent or ratification of each of the other Defendants in doing the things alleged in this Complaint.

15. As set forth in detail below, the claims in this Complaint are based upon a transaction in which Plaintiff provided the Loan to Defendant Borrower that was used to pay the purchase price for the purchase of the Aircraft. Because the Aircraft by their very nature and are subject to depreciation and risk of catastrophic loss and can be moved and stored in any location in the world, the immediate appointment of a receiver with respect to the Aircraft and other collateral is essential and necessary to protect Plaintiff's interest in the Aircraft and other collateral.

## FIRST CLAIM FOR RELIEF
### Breach of Written Contract
**(Against Defendant YICIF, LLC and Does 1 through 20, inclusive)**

16. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 15, inclusive, of the Complaint as if those allegations were set forth herein.

17. On or about October 14, 2022, Plaintiff, as lender, agreed to make the Loan and did loan to Defendant Borrower the principal sum of $7,800,000.00;

18. To evidence the indebtedness and obligations owed by Defendant Borrower to Plaintiff pursuant to the Loan, Defendant Borrower signed and delivered to Plaintiff a Promissory Note dated as of October 14, 2022 (the "Note"). Pursuant to the terms of the Note, Defendant Borrower agreed and promised, among other covenants, to pay Plaintiff the principal amount of $7,800,000.00 and interest accruing on the unpaid principal balance from October 14, 2022, in 59 monthly installment payments of $77,982.76 each, subject to any adjustments to the rate of interest resulting from changes in the Index (as defined in the Note), and a final payment in the sum of $5,336,220.62 and any other amount then due on such

date. The Loan Documents further provide for an increase of the rate of interest in the event of a default under any of the Loan Documents, and further provide that if any installment payment is not paid within 11 days from the date such payment is due, Defendant Borrower is obligated to pay a late charge equal to 5% of the unpaid portion of such payment. A true copy of the Note is attached hereto as **Exhibit "1"** and incorporated herein by reference.

19. In addition to the Note, Plaintiff and Defendant Borrower entered into an Aircraft and Business Loan Agreement dated as of October 14, 2022 (the "Loan Agreement"). A true copy of the Loan Agreement is attached hereto as **Exhibit "2"** and incorporated herein by reference.

20. To secure each Defendant's obligations owed to Plaintiff pursuant to the Loan Documents, Defendant Crown Air and Plaintiff entered into an Aircraft Security Agreement dated as of October 14, 2022 (the "DF Security Agreement"), pursuant to which Defendant Crown Air granted a security interest in a 1999 Dassault Aviation model Falcon 2000 aircraft, serial number 69 and U.S. registration no. N220DF, two CFE 738-1-1B engines, serial numbers P105270 and P105274, and related components (collectively, the "DF Aircraft"). A true copy of the DF Security Agreement is attached hereto as **Exhibit "3"** and are incorporated herein by reference.

21. To secure Defendant's obligations owed to Plaintiff pursuant to the Loan Documents, Defendant 100 Million and Plaintiff entered into a Security Agreement dated as of October 14, 2022 (the "QS Security Agreement"), pursuant to which Defendant Borrower granted a security interest in a 1999 Dassault Aviation model Falcon 2000 aircraft, serial number 81 and U.S. registration no. N281QS, two CFE 738-1-1B engines, serial numbers P105419 and P105510, and related components (collectively, the "QS Aircraft"). A true copy of the QS Security Agreement is attached hereto as **Exhibit "4"** and are incorporated herein by reference.

22. Plaintiff's security interest pursuant to the DF Security Agreement and QS Security Agreement (collectively, the "Security Agreements") in the DF Aircraft and the QS Aircraft (collectively, the "Aircraft") and other assets encumbered by Plaintiff's security interest (collectively, the "Collateral") is perfected by the following:

(a) The filing of the UCC 1 Financing Statement on October 20, 2022, with the Wyoming Secretary of State, designated as Filing Number: 2022-22960829, with respect to the interest of Plaintiff, as "secured party," Defendant Crown Air, as "debtor," and the DF Aircraft described as "collateral" therein (the "DF UCC 1 Financing Statement"). A true copy of the DF UCC 1 Financing Statement is attached hereto as **Exhibit "5"** and incorporated herein by reference.

(b) The filing of the UCC 1 Financing Statement on October 18, 2022, with the Delaware Secretary of State, designated as Filing Number: 20223801446, with respect to the interest of Plaintiff, as "secured party," Defendant 100 Million, as "debtor," and the QS Aircraft described as "collateral" therein (the "QS UCC 1 Financing Statement"). A true copy of the QS UCC 1 Financing Statement is attached hereto as **Exhibit "6"** and incorporated herein by reference.

(c) The filing of the DF Security Agreement with the Federal Aviation Administration ("FAA"), on October 17, 2022, with respect to the interest of Plaintiff, as "secured party," Defendant Crown Air, as "debtor," and DF Aircraft described as "collateral" therein (the "DF FAA Registration"). A true copy of the DF FAA Registration is attached hereto as **Exhibit "7"** and incorporated herein by reference.

(d) The filing of the QS Security Agreement with the FAA, on October 17, 2022, with respect to the interest of Plaintiff, as "secured party," Defendant 100 Million, as "debtor," and QS Aircraft described as "collateral" (the "QS FAA Registration"). A true copy of the QS FAA Registration is attached hereto as **Exhibit "8"** and incorporated herein by reference.

The Note, Loan Agreement, DF Security Agreement, QS Security Agreement, DF UCC 1 Financing Agreement, QS UCC 1 Financing Agreement, DF FAA Registration, QS FAA Registration, and all other documents related thereto and to the Loan are collectively referred to as the "Loan Documents."

### Defaults

23. On February 2, 2024, Plaintiff served on Defendant Borrower and Defendant Guarantors written notice of the occurrence and continuation of certain defaults and Events of Default (as defined in the Loan Documents) under the Loan Documents (the "2/2/2024 Notice of Default") arising from Defendant Borrower's failure to timely pay the regular payment of $86,318.91 due on January 14, 2024 (the total amount due as of January 29, 2024, consisting of past due and unpaid payment of principal and interest and accumulated unpaid late charges is $107,783.65), Defendants Borrower's, Crown Air's, and 100 Million's default and failure to comply with or to perform other terms, obligations, covenants, or conditions contained in the Note, the Security Agreements, the Loan Agreement, and other Loan Documents, Plaintiff's belief that it is insecure, and such other defaults and Events of Default as set forth therein. A true copy of the 2/2/2024 Notice of Default is attached hereto as **Exhibit "9"** and incorporated herein by reference.

24. On February 12, 2024, Plaintiff served on Defendant Borrower and Defendant Guarantors written notice of the occurrence and continuation of defaults and Events of Default under the Loan Documents (the "2/12/2024 Notice of Default") arising from Defendant Borrower's failure to timely pay the a payment in the amount of $2,031,972 due on February 9, 2024 pursuant to the Notice of Demand for LTV Deficiency Payment dated as of February 2, 2024 (the "LTV Deficiency Payment Demand"), Defendant Borrower's and Defendant Guarantors' default and failure to comply with or to perform other terms, obligations, covenants, or conditions contained in the Loan Agreement and other Loan Documents, and

such other defaults and Events of Default as set forth therein.  True copies of the LTV Deficiency Payment Demand and the 2/12/2024 Notice of Default are attached hereto as **Exhibit "10"** and **Exhibit "11,"** respectively, and incorporated herein by reference.

25. On February 29, 2024, Plaintiff served on Defendant Borrower and Defendant Guarantors written notice of the occurrence and continuation of defaults and Events of Default under the Loan Documents (the "2/29/2024 Notice of Default") arising from Defendant Borrower's failure to timely pay the regular payment of $86,318.91 due on February 14, 2024 (the total amount due as of February 14, 2024, consisting of past due and unpaid payment of principal and interest and accumulated unpaid late charges is $112,099.59), Defendant Borrower's and Defendant Guarantors' default and failure to comply with or to perform other terms, obligations, covenants, or conditions contained in the Loan Agreement and other Loan Documents, and such other defaults and Events of Default as set forth therein.  A true copy of the 2/29/2024 Notice of Default is attached hereto as **Exhibit "12"** and incorporated herein by reference.

26. Defendant Borrower failed and refused to pay the sum due and owing to Plaintiff and failed and refused to cure the defaults and Events of Default under the Loan Documents notwithstanding the demands included in the Notices of Default.

27. As of September 19, 2024, the indebtedness due, owing, and payable by Defendant Borrower to Plaintiff is not less than the sum of $7,524,033.78, representing the unpaid principal, interest, late charges, and certain other amounts due as provided in the Loan Documents, plus and exclusive of additional interest, late charges, and other amounts due as provided in the Loan Documents (including without limitation obligations relating to the reimbursement of attorneys' fees and costs incurred by Plaintiff) that are not included in the above-stated amount, which

amounts continue to accrue until paid, according to the terms of the Loan Documents.

28. The Loan Documents provide that Defendant Borrower is to pay Plaintiff's costs and expenses, including attorneys' fees and legal expenses, incurred in connection with the enforcement of the Loan Documents. Plaintiff has retained the law firm Buchalter, A Professional Corporation, and is entitled to an award of attorneys' fees and legal expenses incurred.

## SECOND CLAIM FOR RELIEF

### For Money Lent

**(Against Defendant YICIF, LLC and Does 1 through 20, inclusive)**

29. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 15, inclusive, in this Complaint, which are incorporated herein by reference.

30. Within four years last past, Defendant Borrower became indebted to Plaintiff in the sum of not less than $7,524,033.78 as of September 19, 2024, for money expended to and for the benefit of Defendant Borrower by Plaintiff at Defendant Borrower's insistence and request.

31. As of September 19, 2024, the indebtedness due, owing, and payable by Defendant Borrower to Plaintiff is not less than the sum of $7,524,033.78, representing the unpaid principal, interest, late charges, and certain other amounts due as provided in the Loan Documents, plus and exclusive of additional interest, late charges, and other amounts due as provided in the Loan Documents (including without limitation obligations relating to the reimbursement of attorneys' fees and costs incurred by Plaintiff) that are not included in the above-stated amount, which amounts continue to accrue until paid, according to the terms of the Loan Documents.

32. Plaintiff has performed all its obligations, covenants, and conditions under the Loan Documents that Plaintiff agreed to perform, except for those

obligations, covenants, and conditions excused by the acts or omissions of Defendants.

### THIRD CLAIM FOR RELIEF

### For Account Stated

### (Against Defendant YICIF, LLC and Does 1 through 20, inclusive)

33. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 15, inclusive, in this Complaint, which are incorporated herein by reference.

34. Within four years last past, an account was stated in writing by and between Plaintiff and Defendant Borrower, wherein Defendant Borrower agreed and acknowledged that Defendant Borrower was and is indebted to Plaintiff in a sum of not less than $7,524,033.78 as of September 19, 2024.

35. As of September 19, 2024, the indebtedness due, owing, and payable by Defendant Borrower to Plaintiff is not less than the sum of $7,524,033.78, representing the unpaid principal, interest, late charges, and certain other amounts due as provided in the Loan Documents, plus and exclusive of additional interest, late charges, and other amounts due as provided in the Loan Documents (including without limitation obligations relating to the reimbursement of attorneys' fees and costs incurred by Plaintiff) that are not included in the above-stated amount, which amounts continue to accrue until paid, according to the terms of the Loan Documents.

### FOURTH CLAIM FOR RELIEF

### For Recovery of Personal Property (Claim and Delivery)

### (Against Defendant YICIF, LLC and Does 1 through 20, inclusive)

36. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 36, inclusive, in this Complaint, which are incorporated herein by reference.

37. Under the terms of the DF Security Agreement, Defendant Crown Air granted Plaintiff a security interest in the DF Aircraft and other Collateral, which security interest in the DF Aircraft was duly perfected by virtue of filing of the DF UCC 1 Financing Statement and the DF FAA Registration.

38. Under the terms of the QS Security Agreement, Defendant 100 Million granted Plaintiff a security interest in the QS Aircraft and other Collateral, which security interest in the QS Aircraft was duly perfected by virtue of filing of the QS UCC 1 Financing Statement and the QS FAA Registration.

39. Plaintiff is informed and believes, and based thereon alleges, that the DF Aircraft is in the possession of Defendant Crown Air. Under the terms of the DF Security Agreement, Plaintiff is entitled to immediate possession of the DF Aircraft. Plaintiff hereby demands that Defendant Crown Air deliver possession of the DF Aircraft to Plaintiff.

40. Plaintiff is informed and believes, and based thereon alleges, that the QS Aircraft is in the possession of Defendant 100 Million. Under the terms of the QS Security Agreement, Plaintiff is entitled to immediate possession of the QS Aircraft. Plaintiff hereby demands that Defendant 100 Million deliver possession of the QS Aircraft to Plaintiff.

41. Plaintiff is informed and believes, and based thereon alleges, that the Aircraft, by their very nature, are in immediate risk of destruction, serious harm, concealment, transfer, or removal from wherever the Aircraft may be located at any given time.

## FIFTH CLAIM FOR RELIEF

**For Breach of Contract (Guaranty Agreement)**

**(Against Defendants Crown Air, 100 Million, 100 Mill, YICLBA, Simcha Feller, Ita Feller, and Does 1 through 20, inclusive)**

42. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 28, inclusive, in this Complaint, which are incorporated herein by reference.

43. On or about October 14, 2022, Defendant Crown Air executed and delivered to Plaintiff a written Continuing Guaranty (collectively, the "Crown Air Guaranty Agreement") pursuant to which Defendant Crown Air agreed, among other terms and obligations, to pay to Plaintiff an amount equal to the amount owed by Defendant Borrower to Plaintiff and perform all other obligations of Defendant Borrower owed to Plaintiff, as separate and independent obligations owed to Plaintiff, as an unconditional guaranty of the obligations of Defendant Borrower, and to waive certain rights and protections. A true copy of the Crown Air Guaranty Agreement is attached as **Exhibit "14"** and incorporates by reference.

44. On or about October 14, 2022, Defendant 100 Million executed and delivered to Plaintiff a written Continuing Guaranty (collectively, the "100 Million Guaranty Agreement") pursuant to which Defendant 100 Million agreed, among other terms and obligations, to pay to Plaintiff an amount equal to the amount owed by Defendant Borrower to Plaintiff and perform all other obligations of Defendant Borrower owed to Plaintiff, as separate and independent obligations owed to Plaintiff, as an unconditional guaranty of the obligations of Defendant Borrower, and to waive certain rights and protections. A true copy of the 100 Million Guaranty Agreement is attached as **Exhibit "15"** and incorporates by reference.

45. On or about October 14, 2022, Defendant 100 Mill executed and delivered to Plaintiff a written Continuing Guaranty (collectively, the "100 Mill Guaranty Agreement") pursuant to which Defendant 100 Mill agreed, among other terms and obligations, to pay to Plaintiff an amount equal to the amount owed by Defendant Borrower to Plaintiff and perform all other obligations of Defendant Borrower owed to Plaintiff, as separate and independent obligations owed to Plaintiff, as an unconditional guaranty of the obligations of Defendant Borrower,

and to waive certain rights and protections. A true copy of the 100 Mill Guaranty Agreement is attached as **Exhibit "16"** and incorporates by reference.

46. On or about October 14, 2022, Defendant Simcha executed and delivered to Plaintiff a written Continuing Guaranty (collectively, the "Simcha Guaranty Agreement") pursuant to which Defendant Simcha agreed, among other terms and obligations, to pay to Plaintiff an amount equal to the amount owed by Defendant Borrower to Plaintiff and perform all other obligations of Defendant Borrower owed to Plaintiff, as separate and independent obligations owed to Plaintiff, as an unconditional guaranty of the obligations of Defendant Borrower, and to waive certain rights and protections. A true copy of the Simcha Guaranty Agreement is attached as **Exhibit "17"** and incorporates by reference.

47. On or about October 14, 2022, Defendant Ita executed and delivered to Plaintiff a written Continuing Guaranty (collectively, the "Ita Guaranty Agreement") pursuant to which Defendant Ita agreed, among other terms and obligations, to pay to Plaintiff an amount equal to the amount owed by Defendant Borrower to Plaintiff and perform all other obligations of Defendant Borrower owed to Plaintiff, as separate and independent obligations owed to Plaintiff, as an unconditional guaranty of the obligations of Defendant Borrower, and to waive certain rights and protections. A true copy of the Ita Guaranty Agreement is attached as **Exhibit "18"** and incorporates by reference.

48. On or about October 14, 2022, Defendant YICLBA executed and delivered to Plaintiff a written Continuing Guaranty (collectively, the "YICLBA Guaranty Agreement" and collectively with the Crown Air Guaranty Agreement, the 100 Million Guaranty Agreement, the 100 Mill Guaranty Agreement, the Simcha Guaranty Agreement, and the Ita Guaranty Agreement, the "Guaranty Agreements") pursuant to which Defendant YICLBA agreed, among other terms and obligations, to pay to Plaintiff an amount equal to the amount owed by Defendant Borrower to Plaintiff and perform all other obligations of Defendant

Borrower owed to Plaintiff, as separate and independent obligations owed to Plaintiff, as an unconditional guaranty of the obligations of Defendant Borrower, and to waive certain rights and protections. A true copy of the YICLBA Guaranty Agreement is attached as **Exhibit "19"** and incorporates by reference.

49. Plaintiff accepted the Guaranty Agreements and in reliance thereon and the other Loan Documents, agreed to make and provide, and did make and provide, the loans and financing to Defendant Borrower.

50. On February 2, 2024, Plaintiff served on Defendant Borrower and Defendant Guarantors the 2/2/2024 Notice of Default, which notice included, among other terms, a demand for immediate payment of all obligations due under the Loan Documents, including, without limitation, the Guaranty Agreements.

51. On February 12, 2024, Plaintiff served on Defendant Borrower and Defendant Guarantors the 2/12/2024 Notice of Default, arising from Defendant Borrower's failure to timely pay the a payment in the amount of $2,031,972 due on February 9, 2024 pursuant to the Notice of Demand for LTV Deficiency Payment dated as of February 2, 2024 (the "LTV Deficiency Payment Demand"), which notice included, among other terms, a demand for immediate payment of all obligations due under the Loan Documents, including, without limitation, the Guaranty Agreements.

52. On February 29, 2024, Plaintiff served on Defendant Borrower and Defendant Guarantors the 2/29/2024 Notice of Default, which notice included, among other terms, a demand for immediate payment of all obligations due under the Loan Documents, including, without limitation, the Guaranty Agreements.

53. On May 8, 2024, Plaintiff served on Defendant Borrower and Defendant Guarantors the 5/8/2024 Notice of Default, which notice included, among other terms, a demand for immediate payment of all obligations due under the Loan Documents, including, without limitation, the Guaranty Agreements.

54. As of September 19, 2024, the indebtedness due, owing, and payable jointly and separately by each Defendant Guarantor to Plaintiff is not less than the sum of $7,524,033.78, representing the unpaid principal, interest, late charges, and certain other amounts due as provided in the Loan Documents, plus and exclusive of additional interest, late charges, and other amounts due as provided in the Loan Documents (including without limitation obligations relating to the reimbursement of attorneys' fees and costs incurred by Plaintiff) that are not included in the above-stated amount, which amounts continue to accrue until paid, according to the terms of the Loan Documents.

55. The Guaranty Agreements each provides that each Defendant Guarantor shall pay Plaintiff, jointly and severally, in addition to other obligations provided therein, an amount equal to all expenses, costs, and attorneys' fees and other amounts incurred by Plaintiff in connection with the enforcement of its rights and remedies under and in connection with the Guaranty. Plaintiff has employed the law firm of Buchalter, A Professional Corporation, for the purpose of instituting and prosecuting this action and enforcing its rights and remedies under the Loan Documents.

## SIXTH CLAIM FOR RELIEF

### For Appointment of Receiver

**(Against Defendants Crown Air, 100 Million, and Does 1 through 20, inclusive)**

56. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 28, inclusive, in this Complaint, which are incorporated herein by reference.

57. Pursuant to the Security Agreements, Defendant Crown Air and Defendant 100 Million each acknowledged Plaintiff's right to the appointment of a receiver to possess and administer the Aircraft and other Collateral. As a result of the defaults alleged herein, under the terms of the Security Agreements and the other Loan Documents and pursuant to Federal Rule of Civil Procedure 66, Plaintiff

is entitled to the appointment of a receiver in order to protect itself against irreparable harm.

58. Because the Aircraft are (a) mobile, (b) possibly in the possession of or capable of being placed in the possession of, and operated by unknown third parties, (c) in immediate risk of damage, destruction, serious harm, concealment, transfer, or removal from wherever the Aircraft may be located at any given time, (d) subject to depreciation, and (e) possibly uninsured or underinsured, it is imperative that a receiver be appointed immediately with all of the usual and customary powers of a receiver, including, without limitation, (X) locating and assembling and taking possession of the Aircraft and other Collateral, wherever located, in order to fully administer and protect such assets, (Y) collecting proceeds of or arising from the use of the Aircraft (the "Plaintiff Collateral Proceeds" and collectively with the Aircraft, the "Plaintiff Receivership Property") and forwarding Plaintiff Collateral Proceeds to Plaintiff, and (Z) taking all appropriate measures that are necessary to protect the Plaintiff Receivership Property.

59. Unless a receiver is immediately appointed, the Plaintiff Receivership Property is at risk of being lost, secreted, or misappropriated, or at a minimum, will greatly dissipate in value, all to the detriment of and irreparable harm to Plaintiff.

60. Plaintiff has no speedy or adequate remedy at law and will suffer irreparable damage, injury, and harm unless the appropriate equitable relief is granted.

## **PRAYER**

WHEREFORE, Plaintiff pray for judgment against all Defendants in this action as follows:

<u>On the First Claim for Relief against Defendant Borrower</u>:

1. For the amount of not less than $7,524,033.78, together with additional interest, late charges, and other amounts due as provided in the Loan Documents according to proof at time of trial or entry of judgment;

2. For reasonable attorneys' fees;

<u>On the Second and Third Claims for Relief against Defendant Borrower:</u>

3. For the amount of not less than $7,524,033.78, together with additional interest, late charges, and other amounts due as provided in the Loan Documents according to proof at time of trial or entry of judgment;

<u>On the Fourth Claim for Relief against Defendant Borrower:</u>

4. For judgment for possession of the Aircraft;

5. For reasonable attorneys' fees;

<u>On the Fifth Claim for Relief against Defendant Guarantors, jointly and severally</u>:

6. For the amount of not less than $7,524,033.78, together with additional interest, late charges, and other amounts due as provided in the Loan Documents according to proof at time of trial or entry of judgment;

7. For reasonable attorneys' fees;

<u>On the Sixth Claim for Relief against Defendant Crown Air and Defendant 100 Million</u>:

8. For the immediate appointment of a receiver with all the usual and customary powers of a receiver, including, without limitation, (X) locating and assembling and taking possession of the Aircraft and other Collateral, wherever located, in order to fully administer and protect such assets, (Y) collecting the Plaintiff Collateral Proceeds and forwarding Plaintiff Collateral Proceeds to Plaintiff, and (Z) taking all appropriate measures that are necessary to protect the Plaintiff Receivership Property.

9. For a temporary restraining order and a preliminary and permanent injunction restraining and enjoining Defendant Crown Air and Defendant 100 Million, and each of them, and their agents, officers, directors, employees, and representatives, from, among other things, engaging in, or performing, directly or indirectly, any or all of the following acts:

10. Interfering, hindering, or molesting in any way whatsoever the receiver in the performance of the receiver's duties and in the performance of any duties incidental thereto;

11. Transferring, directly or indirectly, any interest by sale, or by pledge, grant of security interest, assignment, invoice, or encumbrance in any manner, any of the Aircraft or other Collateral, wherever located, and the Plaintiff Collateral Proceeds;

12. Moving, destroying, deleting, or altering any of records (whether physical or electronic) as to the Plaintiff Receivership Property;

13. Moving any of the Plaintiff Receivership Property, including, without limitation, computers and computer components from any office or location, without the consent of Plaintiff;

14. Transferring, concealing, destroying, defacing, or altering any of the books and records relating to the Aircraft (whether physical or electronic);

15. Demanding, collecting, receiving, or in any other way diverting or using any of the Plaintiff Collateral Proceeds; and

16. Failing or refusing to immediately turn over to the receiver all of the Plaintiff Receivership Property.

<u>On All Claims for Relief</u>:

17. For costs of suit herein incurred;

18. For such other and further relief as the court may deem proper.

DATED: September 19, 2024

BUCHALTER
A Professional Corporation

By:/s/ *Pooya E. Sohi*
William S. Brody
Pooya E. Sohi
Russell L. Allyn
Attorneys For Plaintiff,
BANK OF HOPE

BN 84203403V6

19

**COMPLAINT**