WILLIAM S. BRODY (SBN 136136)
  Email: wbrody@buchalter.com
POOYA E. SOHI (SBN: 241574)
  Email: psohi@buchalter.com
RUSSELL L. ALLYN (SBN: 14353)
  Email: rallyn@buchalter.com
BUCHALTER
A Professional Corporation
1000 Wilshire Blvd. Suite 1500
Los Angeles, CA  90017-2457
Telephone: (213)  891-0700
Facsimile:  (213)  896-0400

Attorneys for Plaintiff,
BANK OF HOPE, a California corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Plaintiff BANK OF HOPE, a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>YICIF, LLC, a New York limited liability company; CROWN AIR, LLC, a Wyoming limited liability company; 100 MILLION, LLC, a Delaware limited liability company; 100 MILL, LLC, a Delaware limited liability company; YES I CAN LICENSED BEHAVIOR ANALYST PLLC, a New York limited liability company; SIMCHA FELLER, an individual; ITA FELLER, an individual; and DOES 1 through 20, inclusive,<br><br>　　　　　Defendants. | Case No:  2:24-cv-08061-MRA-RAO<br><br>Hon. Mónica Ramírez Almadani<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE RIGHT TO ATTACH ORDERS AND QUASH WRITS OF ATTACHMENT**<br><br>[*Concurrently filed with Declaration of Peter Cerruto*]<br><br>Date:　　September 15, 2025<br>Time:　　10:00 a.m.<br>Courtroom:  9B (via Zoom hearing) |

BN 92332542V1

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 5 |
| II. | PROCEDURAL BACKGROUND | | 6 |
| | A. | Plaintiff Files and Serves Its Complaint and the Applications | 6 |
| | B. | The Court Conducts the RTAO Hearing, and Later Enters the Fellers' Defaults and Grants Plaintiff's Unopposed Applications | 7 |
| | C. | Defendants File the Belated Motion | 8 |
| | D. | The Parties Stipulate to Set Aside the Defaults as to All Defendants and to Vacate the Writs as to the Entity Defendants | 8 |
| III. | LEGAL ARGUMENT | | 9 |
| | A. | The Motion Is Untimely and Procedurally Barred | 9 |
| | B. | The "No Personal Service" Argument Both Misstates the Law and Is Irrelevant | 11 |
| | C. | The Fellers Are Not Entitled to Any Reduction of the Attachment Amounts | 11 |
| | D. | The Motion Otherwise Fails To Provide Any Legal or Substantive Basis to Disturb the Court's Order Granting the Applications | 16 |
| IV. | CONCLUSION | | 17 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Guaranty Corp. v. Stoody*,
  230 Cal.App.2d 390 (1964) ................................................................................. 15

*American Security Bank v. Clarno*,
  151 Cal.App.3d 874 (1984) ................................................................................. 15

*Brunswick Corp. v. Hays*,
  16 Cal.App.3d 134 (1971) ................................................................................... 15

*Coppola v. Superior Court*,
  211 Cal.App.3d 484 (1989) ................................................................................. 13

*Eisendrath v. Bank of America*,
  118 Cal.App.2d 434 (1953) ................................................................................. 13

*Engleman v. Bookasta*,
  264 Cal.App.2d 915 (1968) ................................................................................. 15

*Harm v. Frasher*,
  181 Cal.App.2d 405 (1960) ................................................................................. 15

*Oracle America, Inc. v. Procore Techs., Inc.*,
  No. 24-cv-07457-JST, 2025 WL 1069892 (N.D. Cal. Apr. 9, 2023) ................ 13

*Patterson-Ballagh Corp. v. Byron Jackson Co.*,
  145 F.2d 786 (9th Cir. 1944) ............................................................................... 15

*Rreef America Reit II Corp, YYY v. Samsara, Inc.*,
  91 Cal.App.5th 609 (2009) .................................................................................. 12

*Shaw v. Regents of Univ. of Calif.*,
  58 Cal.App.4th 44 (1997) .................................................................................... 13

*United Central Bank v. Superior Court*,
  179 Cal.App.4th 212 (2009) ................................................................................ 15

*Wiener v. Van Winkle*,
  273 Cal.App.2d 774 (1969) ................................................................................. 15


**Statutes**

California Civil Code § 1642 ..........................................................................................12

California Civil Code § 2856 ......................................................................................6, 16

CCP § 1005(a)(1) ............................................................................................................9

CCP § 1005(b) ................................................................................................................9

CCP § 413.10(b) .............................................................................................................9

CCP § 415.10 ..................................................................................................................9

CCP § 415.20(b) .............................................................................................................9

CCP § 484.040 ................................................................................................................9

CCP § 484.060(a) ...........................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 5(a)(2) ................................................................................................6, 11

L.R. 7-18 .....................................................................................................................5, 10

Weil & Brown, Cal. Prac. Guide: Civ. Pro. Before Trial (The Rutter
   Group, June 2025 Update), Ch. 9(II)-D ...................................................................10

Plaintiff, Bank of Hope, hereby opposes the Motion to Set Aside Right to Attach Orders and Quash Writs of Attachment ("Motion") (Dkt. No. 87) regarding writs of attachment and right to attach orders ("RTAOs") issued by the Court as to defendants Simcha Feller, an individual ("Simcha"), and Ita Feller ("Ita", and collectively with Simcha, the "Fellers").[1]

## I.  PRELIMINARY STATEMENT

On April 29, 2025, this Court granted Plaintiff's unopposed Applications for Right to Attach Orders and Orders for Issuance of Writs of Attachment (collectively, the "Applications") as to the Fellers (the "Order").[2] Dkt. No. 55. By their Motion, the Fellers now seek to have the Court set aside the RTAOs and quash the writs. However, they are entitled to no such relief.

As a threshold matter, the Motion is procedurally defective. Under California Code of Civil Procedure ("CCP") § 484.060(a), a defendant must file and serve a notice of opposition to the issuance of a RTAO "no later than five court days" before the hearing. A defendant who fails to do so "shall not be permitted to oppose the issuance of the order." *Ibid.* Having elected not to timely oppose the Applications, the Motion is time-barred. Similarly, the Motion's reliance on CCP § 485.240 is misplaced, as that section permits challenges to *ex parte* attachment orders, not to orders issued after a noticed hearing, which occurred here. Finally, to the extent the Motion asks the Court to "reconsider" its April 29, 2025 Order, it is untimely under L.R. 7-18, as any challenge to the Order had to be filed within 14 days of entry of the order. Accordingly, the Motion should be denied on procedural grounds alone.

Even if the Court were to reach the Motion's "merits," it neither undermines the Applications nor provides any basis to disturb the Court's Order. Plaintiff was

---

[1] The Motion was also filed by five Entity Defendants affiliated with the Fellers. At the parties' request, the Court vacated the RTAOs and quashed the writs of attachment as to the Entity Defendants. Dkt. No. 94. Thus, this Opposition pertains only to the relief sought by the Fellers.
[2] Despite having been duly served more than one month before the December 11, 2024 hearing, the Fellers elected not to oppose the Applications.

not required to personally serve the Fellers with the RTAOs or writs under CCP § 482.080(b), as that section applies to *turnover orders*—not prejudgment RTAOs. In any event, the Fellers' defaults were entered in December 2024, relieving Plaintiff of any obligation to serve them with further documents in this action. Fed. R. Civ. P. 5(a)(2).

The fair market value of the Aircraft Collateral pledged by two Entity Defendants likewise does not reduce the amount of the attachments as to the Fellers. CCP § 483.015(b) requires a reduction only for collateral pledged by the defendant whose property is attached. The Fellers pledged no collateral. Further, the broad waivers in their Guaranty Agreements—expressly authorized by California Civil Code § 2856—confirm that their obligations are not secured by any collateral pledged by others.

Finally, even if the Fellers could raise arguments regarding Plaintiff's alleged conduct in connection with the loan and its borrower—which they expressly waived in their Guaranty Agreements—the Motion still fails. The Motion does not controvert the evidence supporting the Applications or Plaintiff's right to an attachment against the Fellers, including proof that the borrower committed multiple payment and other material defaults, that the Fellers each executed binding personal guaranties, and that they have not satisfied those obligations.

In short, the Motion is an untimely and procedurally improper attempt to re-litigate issues already decided after the Court's full consideration of Plaintiff's evidentiary showing. Accordingly, the Court should deny the Motion.

## II. PROCEDURAL BACKGROUND

### A. Plaintiff Files and Serves Its Complaint and the Applications

On September 19, 2024, Plaintiff initiated this action against the Fellers and five related entities by the filing of its Complaint. Dkt. No. 1.

On October 21, 2024, Plaintiff filed its Applications for RTAOs and writs of attachment against Defendants. *See* Dkt. Nos. 14–27 [Applications and Notices of

1  Motion]; Dkt. No. 28 [Memo. in Support of Applications]; Dkt. No. 29 [Decl. of
2  Jeffrey Dorrough]; Dkt. No. 30 [Decl. of Jihae Cho]. The hearing was noticed for
3  December 11, 2024.[3]

4  The Applications—particularly the Declaration of Jihae Cho, Plaintiff's
5  special assets officer assigned to the subject loan ("Cho Declaration")—set forth the
6  lending relationship between Plaintiff and its Borrower, defendant YICIF, LLC,
7  regarding a $7,800,000 loan extended by Plaintiff to Borrower. The evidence
8  demonstrated that Borrower had committed multiple material defaults under the
9  loan—including repeated payment defaults. The Applications also established that
10 the Fellers each executed personal guaranties securing Borrower's repayment
11 obligations to Plaintiff, they had failed to fulfill those obligations in breach of their
12 guaranties, and Plaintiff was thus entitled to right to attach orders and writs of
13 attachment against them pursuant to California law. *See also* Order.

14 On November 6, 2024, Peter Cerruto, a registered process server, personally
15 served Ita with the Summons, Complaint, and related filings, as well as with the
16 Applications and supporting evidence. Dkt. No. 43 (Proof of Service); *see also* the
17 concurrently filed Decl. of Peter Cerruto ("Cerruto Decl.") at ¶ 4, Ex. 1. At the
18 same time, Mr. Cerruto served Simcha—via Ita, Simcha's spouse—initiating
19 substituted service. Those documents were then mailed to Simcha at the same
20 address of service on November 6, 2024. Dkt. No. 44; *see also* Cerruto Decl. at ¶
21 5, Ex. 2. Substitute service followed multiple unsuccessful attempts by Mr. Cerruto
22 to personally serve Simcha. Cerruto Decl. at ¶ 3, Ex. 1; *see also* Dkt. No. 39 (Dec
23 of Diligence).

24 **B.  The Court Conducts the RTAO Hearing, and Later Enters the**
25 **Fellers' Defaults and Grants Plaintiff's Unopposed Applications**

26 On December 11, 2024, the Court held the hearing on the Applications. Only
27 counsel for Plaintiff appeared at the hearing. Although they had been duly served

---

[3] Hereinafter, "Applications" refers collectively to the applications and supporting documents.

with the Applications, the Fellers did not file any opposition (*see* Dkt. No. 47 [Plaintiff's Notice of Non-Opposition to Application]), nor were they represented at the hearing. Following oral argument, the Court took the matter under submission. Dkt. No. 50 (Minutes of Hearing).

On December 16, 2024, Plaintiff filed a Request for Entry of Default against Defendants, including the Fellers. Dkt. No. 49. On December 17, 2024, the clerk entered defaults against Fellers. Dkt. No. 52.

On April 29, 2025, the Court issued its Order granting Plaintiff's Applications against the Fellers, subject to Plaintiff posting a $10,000 undertaking. Dkt. Nos. 55. Plaintiff posted the undertakings on May 1, 2025. Dkt. Nos. 66, 67.

### C. Defendants File the Belated Motion

On June 9, 2025, the Fellers filed the Motion. Dkt. No. 87. The Motion contends the Court should set aside the RTAOs and quash the writs issued against them because:

> (3) Plaintiff failed to personally serve the Attach Orders and Writs on [the Fellers]; and (4) the final amounts stated on the Writs are inaccurate; and (5) [the Fellers], to the extent that there is jurisdiction over them, should be afforded the right to contest the Writ Applications on the merits at this time.

Mot. at 2:7-10.[4] Notably, the Motion does not dispute: (i) Borrower having entered into the subject loan documents or having received loan proceeds; (ii) Borrower's subsequent defaults (including multiple payment defaults); (iii) the validity of the Fellers' Guaranty Agreements; (iv) their breach of the guaranties; or (v) Plaintiff having demonstrated through competent evidence its right to the RTAOs and writs against them.

### D. The Parties Stipulate to Set Aside the Defaults as to All Defendants and to Vacate the Writs as to the Entity Defendants

On July 15, 2025, Plaintiff filed a stipulation entered into by and among the parties requesting that the Court, inter alia, set aside the defaults as to all

---

[4] At the same time, they filed a motion to set aside the defaults entered against them. Dkt. No. 86.

Defendants, and to set aside the RTAOs and quash the writs as to the Entity Defendants. Dkt. No. 93. Although Plaintiff believed (and believes) that service upon the Fellers was proper, Plaintiff agreed to stipulate to setting aside those defaults rather than expend resources and further delay these proceedings contesting their motion to set aside the defaults. *Id.* at ¶ 2.

On July 16, 2025, the Court entered its order on the stipulation, providing the relief stipulated by and among the parties. Dkt. No. 94.

On July 30, 2025, the Court entered a further order relating to the briefing schedule and hearing date on the Motion. Dkt. No. 96.

## III. LEGAL ARGUMENT

### A. The Motion Is Untimely and Procedurally Barred

When seeking an attachment on noticed motion, California law requires the plaintiff to serve notice of the RTAO hearing on the defendant at least 16 court days before the hearing. CCP §§ 484.040; *see also* CCP § 1005(a)(1), (b). Any opposition ***must*** be filed and served at least five court days before the hearing. CCP § 484.060(a). The statute is explicit: "If the defendant fails to file a notice of opposition within the time prescribed, the defendant shall not be permitted to oppose the issuance of the order." *Ibid*.

Here, the RTAO hearing was noticed for December 11, 2024. Plaintiff, through a registered process server, lawfully served the Complaint, the Applications, etc.: (i) personally on Ita on November 6, 2024 (*see* CCP §§ 413.10(b), 415.10); and (ii) via substitute service on Simcha, with service effective November 16, 2024 (CCP §§ 413.10(b), 415.20(b)). Dkt. Nos. 39, 43, 44; *see also* Cerruto Decl. Ita and Simcha were thus served 35 days and 25 days, respectively, before the RTAO hearing—well beyond the statutory minimum. Having elected not to oppose the Applications, each waived any right to challenge the Applications or the Court's order granting them.[5]

---

[5] Alternatively, if the Motion is considered one for reconsideration, it is untimely as it was

The Motion offers no plausible basis to excuse the Fellers untimely attempt to re-litigate issues that should have been raised before the December 11, 2024 RTAO hearing. Ita and Simcha *concede* having been served on November 6, 2024. Decl. of Ita Feller ("Feller Decl.") at ¶ 7; Decl. of Simcha Feller ("Simcha Decl.") at ¶ 5. Whether or not Ita knew or understood the significance of the documents, was represented by counsel, or the fact she is not an attorney (Ita Decl., ¶¶ 7, 11) does not render service ineffective or excuse her failure to timely oppose the Applications. Nor was Mr. Cerruto obligated to "relay an instruction to [her] as what to do with the documents. Ita Decl., ¶ 8. Similarly unpersuasive and immaterial is whether Simcha "authorized" Ita to accept service on his behalf. Simcha Decl., ¶ 5. California law imposes no such obligations to effectuate service of process. Thus, by failing to timely oppose the Applications, the Fellers have waived any right to challenge the Applications and the Order.

Finally, the Motion's reliance on CCP § 485.240 as a supposed basis to move to set aside the RTAOs and quash the writs is misplaced. Mot. at 4:9-13. That provision applies only to challenges of *ex parte* RTAOs, not to orders issued after a noticed hearing. Further, no similar provision pertains to noticed RTAO hearings. *See* Weil & Brown, Cal. Prac. Guide: Civ. Pro. Before Trial (The Rutter Group, June 2025 Update), Ch. 9(II)-D at section 9:924 ("The motion to set aside a RTAO is available only for *ex parte* RTAOs. There is no equivalent procedure available for setting aside a RTAO or writ of attachment issued after noticed hearing.").

In summary, the record establishes that the Fellers were timely served with the noticed Applications. Their failure to act within the statutory timeframes is fatal to the Motion, and the Court should deny it on this basis alone.

///

///

---

required to be served within 14 days of the Court's order, and, further, fails to meet the requirements of L.R. 7-18.

## B. The "No Personal Service" Argument Both Misstates the Law and Is Irrelevant

The Motion contends that Plaintiff was required to personally serve the Fellers with the RTAOs and writs pursuant to CCP § 482.080(b). Mot. at 7:6-19. Section 482.080(b), however, governs *turnover orders*—orders to deliver specific property to a levying officer—not prejudgment RTAOs. No such "personal service" requirement applies here.

In fact, Plaintiff had no obligation whatsoever to serve those or any other documents on the Fellers once their defaults had been entered in December 2024. "No service is required on a party who is in default for failing to appear," except for pleadings asserting new claims for relief. *See* Fed. R. Civ. P. 5(a)(2); *see also United States v. Pacific Health Corp.*, CV-12-00960 RSWL-JC, 2019 WL 13071960, *2 (C.D. Cal. Nov 21, 2019). Because the attachment proceedings asserted no new claims, no further service or notice to the Fellers as defaulted parties was required.

For these reasons, the Court should reject the Fellers' attempt to graft the turnover order service requirement—or indeed *any* service requirement—on Plaintiff as a basis to grant the Motion.

## C. The Fellers Are Not Entitled to Any Reduction of the Attachment Amounts

Relying on CCP § 483.015(b)(4), the Motion contends the amounts secured by the Fellers' writs—$7,332.899.74 (*see* Dkt. Nos. 75 (Simcha) and 76 (Ita)—should be reduced by the fair market value of the Aircraft Collateral pledged for Borrower's loan obligations by two other defendant guarantors, Crown Air, LLC and 100 Million, LLC. Mot. at 7:22-8:7. Again, the Motion misstates and misapplies the law.

CCP § 483.015(b)(4) provides that the amount to be secured by an attachment shall be reduced by "[t]he value of any security interest in ***the property***

*of the defendant* held by the plaintiff to secure the defendant's indebtedness claimed by the plaintiff…." CCP § 483.015(b)(4) (emphasis added). Here, the Fellers did not grant Plaintiff any security interest in *their* property to secure *their* indebtedness. Thus, that section simply does not apply here.

The other authorities cited in the Motion lend the Fellers no support. In *Rreef America Reit II Corp, YYY v. Samsara, Inc.*, 91 Cal.App.5th 609 (2009), Rreef obtained a writ of attachment against Samsara following Samsara's breach of a lease agreement. *Id.* at 613. In connection with the lease, Samsara had procured a letter of credit securing its lease payment obligations, naming Rreef as beneficiary. *Ibid.* Samsara argued that the amount of the attachment should be reduced by the amount of the letter of credit. *Ibid.* Both the trial court and the appellate courts disagreed, finding that Rreef's interest in the letter of credit did not fall within the scope of CCP § 483.015 (b)(4). *Id.* at 623. Far from helping the Fellers, *Rreef* confirms that even collateral provided by the defendant does not necessarily reduce an attachment amount—much less collateral pledged by a third party.

The Motion's reliance on the California Commercial Code is equally misplaced. There is no dispute here about whether the Aircraft constitutes security for Borrower's obligations or whether it is governed by the Commercial Code. The only relevant question is whether the Aircraft secures the Fellers' separate guaranty obligations. As CCP § 483.015(b)(4) makes clear, it does not.

As a final "Hail Mary," the Motion contends that every document related to the lending relationship—i.e., the Promissory Note and the Aircraft and Business Loan Agreement signed by Borrower; the Aircraft Security Agreements signed by Crown Air and 100 Million, respectively; and the five Guaranty Agreements—should be treated as a single agreement, such that the Aircraft Collateral also secures the Fellers' guaranty obligations. Mot. at p. 8, fn. 3. This theory fails both legally and factually.

California Civil Code § 1642 allows courts to construe multiple contracts together only if they relate to the same matters and are "**between the same parties**." However, it does not override the express terms of agreements between parties, nor does it merge separate agreements into one. As succinctly stated by the district court in *Oracle America, Inc. v. Procore Techs., Inc.*, No. 24-cv-07457-JST, 2025 WL 1069892, at *3 (N.D. Cal. Apr. 9, 2023):

> It is true that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642. But courts draw a line between interpreting multiple contracts as one transaction and merging them together as one contract. *See, e.g., Alberto v. Cambrian Homecare*, 91 Cal.App.5th 482, 491 (2023) ("Construing different instruments together pursuant to Civil Code section 1642 is not the same thing as incorporating them into one instrument"); *Tulare Golf Course, LLC v. Vantage Tag, Inc.*, No. 1:21-cv-00505-JLT-SKO, 2023 WL 2587994, at *6 (E.D. Cal. Mar. 21, 2023) ("construing two agreements 'in light of one another' does not 'merge them into a single written contract'") (*quoting Mountain Air Enters., LLC v. Sundowner Towers, LLC*, 3 Cal.5th 744, 760 (2017)).

Rather, courts shall "resort to the traditional rules governing interpretation of contracts, which 'teach us that the overriding goal of interpretation is to give effect to the parties' mutual intentions as of the time of contracting . . . Where contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further.'" *Shaw v. Regents of Univ. of Calif.*, 58 Cal.App.4th 44, 53 (1997), *quoting Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 40 Cal.App.4th 1699, 1707 (1995).

Here, there is nothing in the Fellers' Guaranty Agreements even to suggest that they are secured by the Aircraft Collateral. In fact, the express language of those agreements confirms that any collateral pledged for Borrower's loan obligations would not secure their guaranties. (Dkt. No. 30 [Cho Decl.] at ¶¶ 24-25; Exs. 19 and 20). "[A] guarantee is an obligation separate and independent from that binding the principal debtor." *Coppola v. Superior Court*, 211 Cal.App.3d 484, 865-66 (1989). "The guarantor's obligation rests solely upon its contract of guaranty. . . [S]uit may be maintained upon it without reference to any proceeding

against the principal debtor or the security." *Eisendrath v. Bank of America*, 118 Cal.App.2d 434, 438 (1953).

The waivers in the Guaranty Agreements signed by the Fellers allow Plaintiff to proceed against them for the full indebtedness without consideration of the Collateral. Specifically, the "GUARANTOR'S WAIVERS" section in each of the Guaranty Agreements provides in part as follows (emphasis added):

> "… Guarantor waives any right to require Lender to. . . (B) proceed against any person, including Borrower, before proceeding against Guarantor; (C) **proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Guarantor**. . . . (E) give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) **disclose any information about the Indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender**; or (G) pursue any remedy or course of action in Lender's power whatsoever.
>
> **Guarantor also waives any and all rights or defenses arising by reason of (H) any disability or other defense of Borrower, any other guarantor or surety or any other person**; (I) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (J) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K) **any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise**; (L) any statute of limitations in any action under this Guaranty or on the Indebtedness; or (M) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate, and including any such modification or change in terms after revocation of this Guaranty on the Indebtedness incurred prior to such revocation.
>
> Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.
>
> * * *
>
> Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and

guaranty, anti-deficiency laws, and the Uniform Commercial Code. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. **Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender**, given for full and ample consideration, and is enforceable on its own terms. Until all of the Indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, **Guarantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender**.

Case law likewise holds that guarantors can waive their rights to potential claims and defenses against the creditor, including claims and defenses arising pursuit of collateral and secured claims of primary obligors. *See, e.g., American Security Bank v. Clarno*, 151 Cal.App.3d 874 (1984); *Brunswick Corp. v. Hays*, 16 Cal.App.3d 134 (1971); *Wiener v. Van Winkle*, 273 Cal.App.2d 774 (1969); *Engleman v. Bookasta*, 264 Cal.App.2d 915 (1968); and *American Guaranty Corp. v. Stoody*, 230 Cal.App.2d 390 (1964). The writ of attachment holding in *United Central Bank v. Superior Court*, 179 Cal.App.4th 212 (2009), gives force to the standard waivers contained in the present Guaranty Agreements. Accordingly, none of the Defendants other than Crown Air and 100 Million are entitled to reduction for the value of the Aircraft collateral from the amount of the debt owing to Plaintiff.

Finally, the Motion's cited cases do not help the Fellers. *Patterson-Ballagh Corp. v. Byron Jackson Co.*, 145 F.2d 786 (9th Cir. 1944), involved four contracts between the **same two parties**, forming one unified transaction. Here, there are multiple agreements among different parties, and the Fellers signed only their own guaranties. *Harm v. Frasher*, 181 Cal.App.2d 405 (1960), involved three interdependent contracts expressly referring to one another and required mutual performance; no such interdependence exists here.

Because the Fellers did not pledge collateral for their obligations and nothing in the Fellers' guaranties ties their obligations to collateral pledged by others, the

amount of the attachments against them should not be reduced.[6]

### D. The Motion Otherwise Fails To Provide Any Legal or Substantive Basis to Disturb the Court's Order Granting the Applications

The Motion concludes with a request that the Court compel Plaintiff to refile its Applications so the Fellers may later oppose them. That opportunity has passed. If the Court nonetheless considers the belated Motion, the burden is on the Fellers to prove the Court erred in granting the RTAOs and writs. Plaintiff has already established by competent evidence its right to an attachment (as reflected in the Court's order), and the Fellers have offered nothing to rebut that showing.

Reliance on their motion to set aside default is misplaced. The Fellers identify no defect in the Guaranty Agreements and present no evidence refuting the statutory findings already made as to their guaranty obligations. Moreover, disputes concerning Plaintiff's lending relationship with Borrower are irrelevant to their obligations as guarantors. By their Guaranty Agreements, the Fellers waived "any and all rights or defenses arising by reason of (H) any disability or other defense of Borrower, any other guarantor or surety or any other person." Such waivers are enforceable under Civil Code § 2856 and bar guarantors from asserting borrower defenses.

Even if the Court considers allegations that Plaintiff acted in bad faith or manufactured non-monetary defaults, the result would not change. The undisputed evidence shows Borrower committed multiple payment and other material defaults under the $7.8 million loan, that the Fellers executed binding personal guaranties, and that neither has satisfied those obligations. Whether Plaintiff acted in bad faith—an assertion unsupported by the record—is irrelevant to the fact that Borrower failed to repay the loan.

---

[6] Even if the Court accepts the Motion's contentions, this would only reduce the amount of the attachments. It would not support setting aside the RTAOs or quashing the writs as to the Fellers.

Finally, the Fellers will still have the right to litigate the merits. CCP § 484.100 expressly provides that an order granting a right to attach "shall not be given in evidence nor referred to at the trial" and does not constitute a determination on the merits. Here, however, they have waived the right to challenge the Applications or the Court's Order and have failed to present competent evidence to overcome the Court's prior findings. There is simply no basis to grant the Fellers' palpable desire to further delay these proceedings.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff requests that the Court deny the Motion in its entirety.

DATED: August 11, 2025

Respectfully submitted,

BUCHALTER
A Professional Corporation

By: */s/ Pooya E. Sohi*
   WILLIAM S. BRODY
   POOYA E. SOHI
   RUSSELL L. ALLYN
   Attorneys for Plaintiff,
   BANK OF HOPE

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Bank of Hope certifies that this brief contains 4,063 words, which complies with the word limit of L.R. 11-6.1.

/s/ *Pooya E. Sohi*
Pooya E. Sohi